UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

BOBBY SNEAD,

      Plaintiff,      Case No. 1:14-cv-1110

v.              Honorable Robert Holmes Bell

JESSICA PERRY et al.,

      Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Bobby Snead presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues the MDOC and its Director, Daniel Heyns, together with the following IBC employees: Mental Health Therapists Jessica Perry and James Kissinger; and Warden Kenneth McKee. Plaintiff sues all Defendants in both their official and individual capacities.[1]

Plaintiff alleges that, in November 2013, he was authorized to participate in the Treatment Readiness for You (TRY) Program at IBC, which is the first phase of the Michigan Sex Offender Treatment Program (MSOP). (*See* Ex. C to Compl., docket #1-1, Page ID#24.) The TRY program is designed to "develop insight into one's thinking and one's hope for the future." (Compl. ¶ 11, Page ID#9.) Plaintiff attended a session of TRY on November 15, 2013. At his first session, Defendant Perry asked the group, "[W]ho in here believes they have a problem?" (*Id.* ¶ 10, Page ID#19.) Plaintiff apparently indicated that he did not believe he had a problem. Perry asked Plaintiff, "[W]hy do you feel you don't have a problem?" (*Id.*) Plaintiff responded,

> [W]hile I was committing an armed robbery, one of my co-defendants began inserting his finger into the victim's rectum. Then, another co-defendant put his finger into the victim[']s vagina. Next, another co-defendant grabbed the victim on the breast[]s. I stood there an watched enjoying the pain and humiliation they were causing the victim. I did nothing about it. Things were getting out of control. So at that point, I stopped the sexual assault because I felt the victim had had enough humiliation and removed here from the room. This is all in the trial transcripts and PSI. I do take full responsibility for what happened.

---

[1] Although Plaintiff states at page 5 of his complaint (Page ID#5) that he intends to sue Defendants Heyns and McKee solely in their official capacities, he contrarily states at page 8 of his complaint (Page ID#8) that he sues all Defendants in both their individual and official capacities. The Court has relied on the most inclusive representation contained in the complaint.

(*Id.*). Defendant Perry immediately and loudly ordered Plaintiff to leave and told him that she was removing him from the program.

Plaintiff immediately attempted to speak with Defendant Kissinger, asking to be reinstated in the program. Plaintiff asked why he was being punished for being honest, and he reminded Kissinger of the purpose of the program, to help prisoners to develop insight into their thinking. Defendant Kissinger told Plaintiff that it was not the program's responsibility to help Plaintiff to understand why his conduct was criminal and why he was responsible. Defendant Kissinger advised Plaintiff to kite again after the group was completed, to see if he could be placed in the next group. Because he was not satisfied with Kissinger's response, Plaintiff filed a grievance.

On November 22, 2013, Kathryn M. McCreight, MSW, who is not a defendant in this action, wrote a Therapy Non-Admission Report. The report indicated that Plaintiff was denied admission to the program, because he did not accept responsibility for his behavior. The report specifically explained that Petitioner was screened on November 15, 2013, to assess his readiness to participate "in phase 1 (TRY) of the Michigan Sex Offender treatment program (MSOP) at IBC." (Ex. C to Compl., Page ID#24.) She indicated that Petitioner had denied taking any part in the offense, minimizing it by saying that he was "just there" when it happened. (*Id.*) As a consequence, Plaintiff was assessed as not being amenable to treatment at that time. She also indicated that Plaintiff should not be added back to the TRY waiting list. She reported that, instead, Plaintiff had been instructed to kite mental health if he was willing to discuss the details of his offense and to actively participate in the program. Upon receiving such a kite, the clinical team would discuss next steps with Plaintiff.

Plaintiff sent a kite to Mental Health Psychologist (unknown) Monstere, who also is not a Defendant in this action. In his letter, Petitioner explained what had happened and indicated that Perry's decision to dismiss him from the program was based on a misunderstanding contained in his Pre-Sentence Information report (PSI), which had not been corrected to reflect the decision at the sentencing hearing to change the language of the PSI to reflect that only some of the co-defendants had committed the sexual assault. (Ex. D to Compl., Page ID#26.) Plaintiff was interviewed by mental-health practitioner (unknown) Butler (not a Defendant) on December 11, 2014. Butler denied Plaintiff's Step I grievance, and and Monstere approved that denial on December 12, 2013. (*Id.*)

On January 10, 2014, Wayne County Judge Lawrence S. Talon sent a notice to the MDOC that Plaintiff had filed a motion to amend the PSI to conform with the sentencing record and to correct inaccurate information. Judge Talon ordered the MDOC to make the following correction to the second page of the PSI:

> Change the words "they all" to "some", which was consistent with the decision of Judge Terrance Boyle to change that language at sentencing. It should read, "All of the defendants then assisted in tying up both complainants with an electrical cord, after which *some* fondled Miss Duncan's breast and buttock."

(Ex. F to Compl., Page ID#30 (empasis in original) (citing "Transcript 11/18/1996, pg.14, lines 9-20").) MDOC officials reported to Plaintiff that the change had been made. (*See id.*; *see also* Ex. G to Compl., Page ID#31.)

Plaintiff sent a kite to Defendant Perry on February 23, 2014, advising her of the changes to the PSI and requesting that he be placed back into the MSOP program. On April 4, 2014, not having received a response from Defendant Perry, Plaintiff consulted with Defendant Kissinger.

Kissinger told Plaintiff that he did "not deserve placement back into the 'TRY' program because [he was] a gang member." Kissinger also told Plaintiff that he had received information from other prisoners to the effect that Plaintiff was making wine and having other prisoners hold it for him. Kissinger told Plaintiff that he did not believe that Plaintiff was ready for group therapy because of his gang affiliation. Plaintiff told Kissinger that he would file a grievance if he was not admitted to therapy.

On April 7, 2014, Defendant Perry sent Plaintiff a form to be used if he wished to seek reconsideration of Kissinger's decision. Plaintiff submitted the reconsideration form on April 10, 2014. Following the form language, Plaintiff admitted that he had previously failed to acknowledge that he had a sexual deviance problem. He further acknowledged that he had enjoyed watching the victim being sexually abused, that he was excited by the abuse, and that his behavior arose from his own sexual deviance. He noted that, since his termination from the program, he had completed "You & ME Boundaries [and] 7 Habits of Hi Effective People." (Ex. H to Compl., Page ID#35.) He also had signed up for "Men & Anger," had renounced his gang status and was waiting for a decision from Lansing about his STG status. In addition, Plaintiff expressed his intent not to deny his sexual deviance, to trust the process and respect the psychologists, and to both provide feedback to others and accept it from others. (*Id.*) On April 21, 2014, Defendant Perry informed Plaintiff that she had not changed her mind and would not allow him back into group.

Plaintiff filed a grievance against Perry on May 2, 2014, which was denied by Nurse Habtermariam and approved by Dr. Monstere on June 6, 2014. The grievance response indicated that Plaintiff had received one opportunity to participate in group therapy on November 15, 2011. He had been removed from the group because he could not admit his own sexual deviancy. The

grievance response indicated that, under "OP 04.06.180-D Sex and Assaultive Offender Program Recommendation, Referral, and Assessment Section IV, item D," Mental Health was not required or obligated to give prisoners a second chance for MSOP. (Ex. J to Compl., Page ID#42.) Plaintiff appealed to Step II. His Step-II grievance was denied on June 25, 2014 by the Assistant Mental Health Director Rick Raymond. He alleges that his Step-III grievance was denied on August 28, 2014.

While his Step-II grievance was pending, on June 21, 2014, Plaintiff sent a letter to the Michigan Parole Board, describing his denial of placement into MSOP and asking for the parole board's recommendation. (Ex. L to Compl., Page ID##51-52.) The parole board responded on July 25, 2014, indicating that the Bureau of Health Care Services was responsible for the placement of prisoners into Sex Offender programming. It further advised that it would gain jurisdiction over Plaintiff's case only when his minimum sentence had been served. Plaintiff was informed that, at the time of parole consideration, an individual parole board member could make a suggestion for programming, but even that would not guarantee placement. (Ex. P to Compl., Page ID#62.)

Plaintiff alleges that Defendants retaliated against him in violation of the First Amendment, deprived him of mental health treatment in violation of the Eighth Amendment, and violated his right to due process under the Fourteenth Amendment. He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## Discussion

### I. Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune

under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

      II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even

under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Heyns or McKee in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intends to suggest that Defendants Heyns and McKee are liable for the conduct of their subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns or McKee engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Retaliation

Plaintiff alleges that Defendants collectively violated his First Amendment rights by retaliating against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff does not expressly indicate what protected conduct was the ostensible cause of Defendants' allegedly retaliatory actions. Assuming that he intends to argue that Defendants retaliated against him for filing grievances, his complaint would satisfy the first prong of the

*Thaddeus-X* standard, as the filing of a grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Assuming further that he claims that he was denied placement in the MSOP TRY program for filing grievances, he would arguably allege adverse action under the second prong of *Thaddeus-X*.

However, Plaintiff's allegations are insufficient to support the third prong of the retaliation standard. Plaintiff's own allegations demonstrate that he was rejected from the MSOP program for denying that he had a sexual deviance and for minimizing his responsibility for the sexual assaults for which he was convicted. Nothing in the complaint indicates that any Defendant acted with a retaliatory motive. The initial rejection from the program occurred before Plaintiff filed any grievance mentioned in the complaint, so the initial rejection was not temporally proximate in a relevant way to his grievance. Although some of the later denials of reconsideration occurred after he filed his initial grievance, all subsequent actions involved reconsideration of that initial determination.

While in some circumstances temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774

F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action – an allegation that is inconsistent with the conduct alleged in the complaint.  He has not alleged any facts to support his conclusion that Defendants retaliated against him because he filed a grievance.  Accordingly, assuming that Plaintiff intends to allege the filing of a grievance as the protected conduct, his allegations fail to state a retaliation claim.

Alternatively, Plaintiff may intend to allege that Defendants acted in retaliation for his statements made during group therapy, denying his sexual deviancy and personal responsibility for his sexual assault convictions.  Under such an analysis, Plaintiff would be alleging that he was punished for exercising his right to free speech.  While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests."  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that

accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90.

In the instant case, Defendants were operating a rehabilitative treatment program that required as a basis for participation that prisoners admit their sexual deviancy and responsibility for their sexual offenses, so that they would be prepared to be treated. First, such a restriction unquestionably is based on an entirely reasonable and legitimate penological interest in ensuring that limited programs are offered only to those who are ready to make use of them. Second, Plaintiff was entirely able to exercise his free speech rights, except within the context of this limited treatment program, so he had numerous alternative means of exercising his right. Third, accommodating Plaintiff's desire to express his denials of responsibility during group therapy sessions would interfere with the treatment of other inmates in the program and would prevent another inmate from taking his place. And fourth, Plaintiff's desire to state his opinion that he did not have a deviance problem could be fully accommodated outside the treatment setting.

Therefore, under *Turner*, 482 U.S. at 89-90, Plaintiff fails to demonstrate that he had a protected right to disclaim responsibility and remain in the treatment program. His retaliation claim therefore fails at the first step. *Cf. Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (recognizing that a prisoner's speech that amounts to insolence is not protected conduct).

In sum, regardless of the retaliation theory intended by Plaintiff, he fails to state a retaliation claim under the First Amendment.

### C. Eighth Amendment

Plaintiff alleges that Defendants' denials of further participation in the MSOP program violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes by prohibiting the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment obligates prison authorities to provide medically necessary medical care, including mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976); *Gov't of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. Apr. 26, 1985). The Eighth Amendment is violated when a

prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. Here, Plaintiff does not claim that his need for mental health treatment was either obvious or serious. He does not suggest that

- 15 -

Defendants' refusal to admit him to MSOP places him at a substantial risk of serious injury, much less that any Defendant should have known of that risk and yet failed to act. Instead, he merely claims that he should be allowed to participate in a rehabilitation program that will help him obtain parole and prepare him for success upon his release. Such allegations fail to state an Eighth Amendment claim.

### D. Due Process

In his final claim, Plaintiff asserts that Defendants have denied him his rights under the Due Process Clause of the Fourteenth Amendment, by ignoring his requests to be readmitted to the MSOP program. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in the MSOP rehabilitative program at IBC. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a

rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in the MSOP program, he was not entitled to a hearing before Perry terminated his participation in the program or before Kissinger refused to readmit him.

Moreover, Plaintiff appears to have had an opportunity to be heard; he simply disagrees with the result. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 1, 2014                         /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE